United States District Court
Southern District of Texas
**ENTERED**
March 23, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THE LANDING COUNCIL OF CO-OWNERS, § § *Plaintiff*, § § v. § § FEDERAL INSURANCE COMPANY, § § *Defendant*. § | CIVIL ACTION H-15-1902 |

## MEMORANDUM OPINION & ORDER

Pending before the court is a motion for partial summary judgment filed by plaintiff The Landing Council of Co-Owners (the "Council") (Dkt. 22) and a motion for summary judgment filed by defendant Federal Insurance Company ("Federal") (Dkt. 23). Federal also files an objection and a motion to strike the Council's summary judgment evidence (Dkt. 25 at 15–16). Having considered the motions, objection, related filings, and applicable law, the court is of the opinion that the Council's motion for partial summary judgment (Dkt. 22) should be GRANTED, and Federal's motion for summary judgment (Dkt. 23) should be DENIED. Additionally, Federal's objection (Dkt. 25 at 15) should be DENIED, and Federal's motion to strike (Dkt. 25 at 16) should be DENIED AS MOOT.

### I. BACKGROUND

This is an insurance coverage dispute on the defendant's duty to defend the insured plaintiff. The Council is a homeowners' association that managed and maintained a condominium development called "The Landing" in El Lago, Texas. Dkt. 13. Federal issued a ForeFront Portfolio for Not-for-Profit Organizations insurance policy (policy number 8208-8151) (the "Policy") to the

Council for the policy period between July 27, 2009, and July 27, 2010.  Dkt. 22, Ex. 3, App. 6.[1] The Policy included directors and officers liability and entity liability coverage with a maximum aggregate limit of liability of $1,000,000.  *Id.*  In addition, Federal issued a Chubb Commercial Excess and Umbrella Insurance Policy (policy number 7957-94-92) to provide coverage for claims in excess of the Policy's $1,000,000 limit.  Dkt. 13.

On September 9, 2008, The Landing was damaged during Hurricane Ike.  Dkts. 22, 23. Over the next two years, several condominium owners filed lawsuits against the Council in state court (the "Underlying Lawsuits"), three of which were the subject of an earlier duty to defend lawsuit.  *See Landing Council of Co-Owners v. Fed. Ins. Co.*, No. H-CV-12-2760, 2013 WL 4787954 (S.D. Tex. Sept. 9, 2013) (Miller, J.) (the "First Coverage Lawsuit").

In the First Coverage Lawsuit, the Council alleged that Federal wrongfully denied coverage for the Council's defense of the Underlying Lawsuits.  *Id.*  Federal moved for summary judgment, arguing that the property damage exclusion in the Policy precluded coverage for all of the Underlying Lawsuits.  *Id.*  The court held that Federal had a duty to defend in one of the three Underlying Lawsuits filed against the Council, the *Bull Capital* Lawsuit.[2]  *Id.*  The court found that the property damage exclusion did not apply to the claims of breach of fiduciary duty and failure to make assessments for common expenses, because these claims appeared to have arisen independently of the hurricane property damage.  *Landing Council*, 2013 WL 4787954, at *7–8.

---

[1] For the purposes of the parties' cross-motions for summary judgment, the parties stipulate to documents in an appendix which can be found in Dkt. 22, Exs. 3–10.  The court will cite to these documents as they are numbered in the appendix.

[2] Cause No. 2010-58056, *Bull Capital Company, et al. v. The Landing Council of Co-Owners, et al.* in the 190th Judicial District Court of Harris County, Texas.

Following the court's ruling in the First Coverage Lawsuit, the parties settled. Dkt. 13. But they agreed that "nothing in the settlement constituted a release or waiver of [the Council's] right to seek defense or coverage for any new pleadings filed in the *Rafferty* suit . . . or Federal's right to deny coverage or raise coverage defenses to such pleading." *See* App. at 1. By the terms of the settlement, the Council could still raise a claim that Federal has a duty to defend based on pleadings filed in the remaining Underlying Lawsuits, including pleadings filed after the Second Amended Petition in the *Rafferty* lawsuit[3] and the counterclaims against the Council in the *Lloyds* lawsuit.[4] *Id.* The state court later consolidated the *Lloyds* lawsuit with the *Rafferty* lawsuit. *See* App. 237–38.

On May 2, 2013, the plaintiffs in the *Rafferty* lawsuit filed their Third Amended Original Petition. *See* App. 120–68. On May 22, 2013, the *Rafferty* plaintiffs filed their Fourth Amended Original Petition. *See* App. 169–218. Subsequently, the *Rafferty* plaintiffs filed their First and Second Supplements to their Fourth Amended Original Petition. *See* App. 219–236. On December 24, 2014, the *Rafferty* plaintiffs filed their Fifth Amended Original Petition, which contains substantially the same allegations as the Third, Fourth, and Supplemental Petitions and thus was not included in the parties' stipulated appendix. *See* Dkt. 13 at 8. The plaintiffs asserted the following causes of action against the Council: breach of fiduciary duty, negligence, gross negligence, tortious interference with contract, slander of title, damage to title, breach of contract, and conspiracy. *See* App. 206 (Fourth Amended Original Petition).

---

[3] Cause No. 2010-56653, *David Rafferty, et al. v. The Landing Council of Co-Owners, et al.* in the 127th Judicial District Court of Harris County, Texas.

[4] Cause No. 2010-27626, *The Landing Council of Co-Owners, et al. v. Lloyds of London, et al.* in the 234th Judicial District Court of Harris County. The *Lloyds* lawsuit was not discussed in the First Coverage Lawsuit.

The Council moves for partial summary judgment and seeks declaratory judgment on Federal's duty to defend the remaining Underlying Lawsuits (the now-consolidated *Rafferty* and *Lloyds* lawsuits). Dkt. 22; *see* App. 237–38.  The Council alleges that Federal failed to defend the Underlying Lawsuits or reimburse the Council for the cost of defense.  Dkt. 13.  Federal also moves for summary judgment for a declaration that it has no duty to defend.  Dkt. 23.  Federal argues that the Policy's property damage exclusion applies to all of the *Rafferty* claims against Council, even after the *Rafferty* plaintiffs filed amended pleadings and filed supplements.  *Id.*  Furthermore, Federal raises an objection to the Council's evidence used in its motion for partial summary judgment and moves to strike an affidavit.  Dkt. 25 at 15–16.

The court will first consider the objection and motion to strike evidence and will then address the cross-motions for summary judgment.

## II. LEGAL STANDARDS

**A.     Motion for Summary Judgment**

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

4

On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

**B.    Duty to Defend**

Under Texas law, courts follow the "eight corners" rule to determine whether an insurer has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). "Under this rule, courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether *any* claim asserted in the pleading is potentially within the policy's coverage." *Id.* "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). Rather, it is determined by examining the eight corners of the pleadings and the policy. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). All doubts with regard to the duty to defend are resolved in favor of the duty. *Id.* Courts applying the eight corners rule "give the allegations in the petition a liberal interpretation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Courts must not, however, "read facts into the pleadings, . . . look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142.

The insured has the burden of showing that a claim is potentially within the coverage of the policy. *Federated Mut. Ins. Co.*, 197 F.3d at 723. However, "if the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply. . . . Once the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion." *Id.* Courts "must adopt the construction of an

5

exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 623, 666 (Tex. 1987). However, the "rules favoring the insured . . . are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable construction, these rules do not apply." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996).

In Texas, an "insurer's duty to defend and duty to indemnify are distinct and separate duties." *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). An "insurer may have a duty to defend but, eventually, no duty to indemnify." *Id.* Here, the parties stipulate that the sole issue in their motions for summary judgment is whether there is a duty to defend. *See* Dkt. 22 at 6; Dkt. 23 at 8.

### III. ANALYSIS

Both parties seek declaratory judgment as to whether Federal has a duty to defend the Council in the remaining Underlying Lawsuits. Dkts. 22, 23. The parties stipulated in their settlement of the First Coverage Lawsuit that the Council reserved the right to seek defense on coverage based on new pleadings filed after *Rafferty*'s Second Amended Petition. Dkts. 13, 22, 23. This would include any claims pleaded in the Third and Fourth Amended Petitions and the First and Second Supplements to the Fourth Amended Petition. *See* App. 120–236.

**A.     Objection and Motion to Strike**

      1.     Objection to Claims Not Pled in the Complaint

Federal argues that the Council raised several allegations from the Underlying Lawsuits for the first time in its motion for partial summary judgment and did not plead them in the complaint.

6

Dkt. 25 at 15. Federal contends that only two allegations from the Underlying Lawsuits were listed in the complaint and in the Council's motion—that the Council did not have authority to market or sell the common elements and real estate; and that the condominium governing regime has not been terminated in accordance with The Landing Declaration and Bylaws. *Id.*; *compare* Dkt. 13 (Pl.'s Compl.), *with* Dkt. 22 (Pl.'s Mot.). Federal contends that all the other allegations listed in the Council's motion were raised for the first time. *Id*. The Council counters that the allegations from the Underlying Lawsuits are merely evidence and thus are not required to be specifically pled in a complaint. Dkt. 28 (citing Fed. R. Civ. P. 8(a)). The Council also refutes Federal's argument and counters that it is not offering new theories of recovery against Federal in its motion, but is providing the court with examples of additional claims from the Underlying Lawsuit that should be covered by the Policy. *Id.*

When evaluating the duty to defend under the eight corners rule, the court compares the four corners of the underlying lawsuit to the four corners of the insurance policy to determine whether any claims alleged in the petition are potentially within the policy coverage. *Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 309–10 (5th Cir. 2010); *Guar. Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

Even when an insured-plaintiff provides the court with scant information on which allegations from the underlying lawsuits establish a duty to defend, courts applying the eight corners rule will look solely to the factual allegations in the underlying lawsuits. *See Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 428 (5th Cir. 2016). The Fifth Circuit in *Hartford* noted that the insured failed to direct the court to specific allegations from the underlying lawsuits that established the insurer's duty to defend. *Id*. The insured instead listed all the allegations from the underlying petitions and broadly stated that "[o]ne, some or all of the above" allegations are covered

by the policy. *Id.* The Fifth Circuit analyzed seventeen allegations from five underlying lawsuits and affirmed the district court's finding of no duty to defend because an exclusion applied. *Id.* ("Undertaking our own more focused analysis, we look at the facts alleged in the [underlying lawsuits].").

Like the plaintiff in *Hartford*, the Council included some, but not all, of the factual allegations from the Underlying Lawsuits in its complaint, and stated that "[t]he amended and supplemental pleadings filed in the *Rafferty* lawsuit since the Second Amended Original Petition all state one or more claims that are covered and not excluded under the Policy." Dkt. 13 at 9.

Following the eight corners rule, the court will examine the factual allegations listed in the Underlying Lawsuits against the insurance policy—not the allegations from the federal complaint. *Hartford*, 827 F.3d at 426; *Willbros*, 601 F.3d at 309. Because the court's duty to defend analysis relies on allegations from the Underlying Lawsuits, the court is persuaded that the Council has pled enough in its complaint to incorporate all of the allegations from the Underlying Lawsuits. Dkt. 13 at 7 ("The Third Amended Petition in the *Rafferty* suit substantially changed and added to the factual allegations, causes of action, and relief sought in that case. *For example*, the plaintiffs added the following allegations . . .") (emphasis added). Therefore, Federal's objection to the Council's pleading is DENIED.

      2.      Motion to Strike Affidavit

Federal moves to strike the affidavit of Charles Thomas Jenkins (Dkt. 22, Ex. A) which was attached to the Council's motion for partial summary judgment. Dkt. 25 at 16 (Def.'s Resp. to Pl.'s Mot.). Federal argues that the affidavit does not identify how Jenkins has personal knowledge of the facts and fails to define which cases comprise the Underlying Lawsuits. The Council argues that

Federal has already stipulated to the existence of the Underlying Lawsuits and the named defendants when Federal admitted to this in its answer. Dkt. 18 (Def.'s Answer).

In keeping with the eight corners rule, the court need not decide Federal's motion to strike because the court does not consider extrinsic evidence in its duty to defend analysis. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 535 (5th Cir. 2004) (affirming district court's strict application of the eight corners rule and refusing to read extrinsic facts into the pleadings). A narrow exception to the eight corners rule applies "when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id.* at 531; *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993) ("[W]hen the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue."). *But see Allstate Cty. Mut. Ins. Co. v. Wootton*, 494 S.W.3d 825, 833 (Tex. App.—Houston [14th Dist.] 2016), *reh'g overruled* (June 9, 2016) ("Despite various requests over the years to recognize exceptions to the eight-corners rule, the Supreme Court of Texas has never done so."); *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 863–64 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (applying the strict eight corners approach to reverse the trial court's use of extrinsic evidence).

Here, the Fourth Amended Original Petition and its supplements contain factual allegations of the claims against Federal. *See* App. 169–236, 259–91. These factual allegations unambiguously state at least one claim facially within the Policy's coverage (for example, that the Council marketed the sale of the real estate without the authority to do so). *See Northfield*, 363 F.3d at 533. Thus, the exception to the eight corners rule does not apply.

The court does not consider extrinsic evidence in its duty to defend analysis and an affidavit attached to a motion for summary judgment (as in this case) is considered extrinsic evidence. Therefore, Federal's motion to strike the Jenkins affidavit is DENIED AS MOOT.

**B.    Cross-Motions for Summary Judgment**

The central issue is whether any of the factual allegations from the amended petitions in the Underlying Lawsuits trigger a duty to defend under the Policy. Dkts. 22, 23. The court will consider the four corners of the Underlying Lawsuits and the four corners of the Policy. In its motion for partial summary judgment, the Council argues that at least one of the claims in the Underlying Lawsuits is covered under the Policy and is outside of the Policy's exclusions, triggering Federal's duty to defend. Dkt. 22. In response and in its cross-motion for summary judgment, Federal argues that the Policy's property damage exclusion applies to all of the claims. Dkts. 23, 25. That is, Federal argues that but for the property damage from the hurricane, there would have been "no wrongful demolition of the condos, no debate about whether to repair or reconstruct The Landing complex in light of the property damage, and no vacant real estate to sell." Dkt. 23 at 19.

The Policy's property damage exclusion excludes coverage for any claims that are "based upon, aris[e] from, or [are] in consequence of any . . . damage to or destruction of any tangible property." *See* App. 37. Under Texas law, the phrase "'arise out of' means that there is simply a 'causal connection or relation,' . . . which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indemn. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations omitted). "In cases involving separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion." *Willbros*, 601 F.3d at 311. "In cases involving concurrent causation, the excluded and covered events combine to cause

10

the plaintiff's injuries," and, "[b]ecause the two causes cannot be separated, the exclusion is triggered." *Id.*

Each party has a different interpretation of the Policy's property damage exclusion. The Council urges the court to analyze "whether the claim *could have* arisen independent of the excluded event or cause" and argues that the alleged claims in the *Rafferty* suit arose due to an intervening cause that "could have arisen without any tangible property damage . . . ." Dkt. 22 at 16. On the other hand, Federal argues that the "based upon, arising from, or in consequence of" language in the property damage exclusion should be interpreted broadly. Dkt. 23 at 13. Federal argues that the court need only find a minimal causal connection to property damage for the exclusion to apply. *Id.*

The court has previously applied the Council's interpretation of the policy when it analyzed whether Federal had a duty to defend the First Coverage Lawsuit. *See Landing Council*, 2013 WL 4787954, at *7. There, the court evaluated whether "there was an independent cause giving rise to and thus a duty to defend" each cause of action and whether the property damage exclusion applied to any claims in the Underlying Lawsuits. *Id.* (holding there was a duty to defend the *Bull Capital* underlying suit with regard to the fiduciary duty issue because the Council's failure to "collect assessments after the hurricane due to an undisclosed interest in selling The Landing . . . could have arisen independent of the hurricane"). Applying the same interpretation of the Policy to the instant case, the court will consider whether there was an independent cause giving rise to and thus a duty to defend the Underlying Lawsuits.

The court's finding of a duty to defend on one claim will trigger the duty to defend on all claims in the underlying lawsuit. *Federated Mut. Ins. Co.*, 197 F.3d at 723. Plaintiffs in the *Rafferty* lawsuit asserted several claims against the Council: that the Council wrongfully demolished the condominium units; improperly distributed insurance proceeds to recipients not entitled to the

11

proceeds; improperly demanded a release of liability as a condition of receiving insurance proceeds; improperly tabulated votes that purportedly terminated the condominium regime; improperly conducted an "advisory vote" against the Declaration rules; improperly called the votes that condominium owners cast as "advisory"; and marketed the sale of real estate upon which The Landing once stood when the Council did not possess such authority. *See* App. 169–236. The interveners in the *Lloyds* lawsuit alleged that the Council unlawfully spent more than $2 million of the $6 million dollars of insurance proceeds it received, failed to hold the proceeds in trust, failed to collect assessments, and failed to disclose to the condominium owners details of a purported offer to purchase the Landing should demolition occur. *See* App. 259–90.

When the allegations in the Underlying Lawsuits and the Policy are examined together, the court concludes that at least some of the factual allegations the *Rafferty* plaintiffs alleged against the Council are excluded from the property damage exclusion. *Compare* App. 169–236, 274–91 (Underlying Lawsuits), *with* App. 37 (Policy's property damage exclusion); *see Willbros*, 601 F.3d at 310 ("Although the allegations include conduct that arguably qualifies as professional service under the terms of the exclusion . . . they also contain conduct that clearly does not fit within the exclusion."). The court finds at least two claims do not fall within the Policy's property damage exclusion.

*1. Authority to market or sell the common elements and land*

The plaintiffs in the *Rafferty* suit alleged that the Council "does not possess the authority to market, much less sell, the real estate." *See* App. 231–36 (Second Supplement to Fourth Amended Petition). The plaintiffs also alleged that a vote was taken and there was no unanimous agreement among the condominium owners to sell the property. *Id.*

The court finds that the Policy's property damage exclusion does not apply to whether the Council had authority to market and sell the land. *Id.*; Dkts. 22, 23. The Council's decisionmaking authority does not "arise out of" tangible property damage, nor did any hurricane property damage cause the Council to make decisions outside of its range of authority. The court agrees with the Council's argument that the "Board *could have* sought to sell the land regardless of any property damage that occurred . . . [and] the covered claim (that the Board does not have authority to market or sell the property) and the excluded event (the tangible property damage) each independently caused the plaintiffs' alleged injuries." Dkt. 22 at 17 (emphasis in original). The court is unpersuaded by Federal's argument that the Policy's property damage exclusion applies to litigation concerning whether the Council had authority to market the sale of the real estate. Dkt. 23.

When conduct to which the exclusion does not apply provides a separate but for cause of the injury, the insurer must provide coverage. *See Willbros*, 601 F.3d at 311. Thus, there was a duty to defend the claim that the Council improperly marketed the sale of the common elements and land. As to this issue, the Council's motion for summary judgment is GRANTED, and Federal's motion for summary judgment is DENIED.

*2. Termination of condominium regime*

Though a finding of a duty to defend for one claim triggers the insurer's duty to defend for all claims, the court will examine whether a second basis establishes a duty to defend out of an abundance of caution. The plaintiffs in the *Rafferty* lawsuit seek a declaration that the condominium regime has not been properly terminated pursuant to its rules. Dkt. 22 at 17; Dkt. 23 at 15. The plaintiffs alleged that at a special meeting, homeowners voted to "determine the scope of the damages and whether or not to reconstruct" the condominium complex. *See* App. at 188. The plaintiffs claimed that this vote did not constitute a vote to terminate the condominium governing

13

regime because there was a lack of notice about the meeting, and the ballot language did not include termination. *Id*. Furthermore, the plaintiffs alleged the vote was improperly conducted because the votes cast did not reach the 67% threshold of votes required by Section 81.110 of the Texas Property Code to terminate The Landing. *Id.*

The Council argues that the improper tallying of votes is an action that falls outside of the Policy's exclusion, because the tallying of votes and the resulting termination of the condominium governing regime did not require or involve property damage. Dkts. 13, 22. Federal, on the other hand, argues that but for the property damage, the "Council would not have been voting to terminate the condo," and thus the exclusion applies and precludes coverage. Dkt. 23 at 16.

The factual allegations show that the Council's actions—tabulating votes and incorrectly determining that the requisite number of votes had been received to terminate the condominium regime—could have arisen separately and independently from any property damage. The court concludes that the mere tallying up of votes does not "arise from" property damage and thus the Policy's property damage exclusion does not apply. Thus, with regard to the claim against the Council for incorrectly tabulating votes and wrongly terminating the condominium regime, Federal has a duty to defend. Accordingly, the Council's motion for partial summary judgment (Dkt. 22) is GRANTED, and Federal's motion for summary judgment (Dkt. 23) is DENIED.

## IV. CONCLUSION

The Council's motion for partial summary judgment for a declaration that Federal has a duty to defend the Council in the Underlying Lawsuits (Dkt. 22) is GRANTED. Federal's motion for summary judgment (Dkt. 23) is DENIED. Additionally, Federal's objection to the Council's pleadings (Dkt. 25 at 15) is DENIED, and its motion to strike the Jenkins affidavit (Dkt. 25 at 16) is DENIED AS MOOT.

Signed at Houston, Texas on March 23, 2017.

_____
Gray H. Miller
United States District Judge